## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

PERRY C. BUTLER,

          Petitioner,

       v.

FELIX M. VASQUEZ, Warden,

          Respondent.

)
)
)
)
)
)
)
)
)
)
)

Case No. CV 16-5931-JEM

MEMORANDUM OPINION AND ORDER
DENYING PETITION FOR WRIT OF
HABEAS CORPUS AND DENYING
CERTIFICATE OF APPEALABILITY

### PROCEEDINGS

On August 9, 2016, Perry C. Butler ("Petitioner"), at that time a prisoner in state custody,[1] filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. Section 2254. Warden Felix Vasquez ("Respondent") filed a motion to dismiss the Petition as unexhausted. On July 3, 2017, the Court denied the motion without prejudice and ordered Respondent to file an Answer addressing the merits.

On August 3, 2017, Petitioner filed an Answer. On September 18, 2017, Petitioner filed a Traverse. The matter is under submission.

---

[1] On May 10, 2018, Petitioner notified the Court of a change of address. His new address is non-custodial.

Pursuant to 28 U.S.C. § 636(c), both parties have consented to proceed before this Magistrate Judge.

## PRIOR PROCEEDINGS

On November 20, 2014, a Los Angeles County Superior Court jury found Petitioner guilty of identity theft (Cal. Penal Code § 530.5(a)) and false personation (Cal. Penal Code § 529(a)(3)). (Respondent's Lodgment ("LD") 18, 2 Clerk's Transcript ("CT") 223-24.) The trial court found true allegations that Petitioner had suffered one prior conviction constituting a "strike" under California's Three Strikes law (Cal. Penal Code §§ 667(b)-(i) & 1170.12(a)-(d)) and had served one prior prison term (Cal. Penal Code § 667.5(b)). (2 CT 291-92.) On December 12, 2014, the trial court sentenced Petitioner to five years in state prison. (2 CT 306-07.)

The same day, Petitioner filed a notice of appeal. (2 CT 310; LD 4.) On April 13, 2015, before his appellate counsel filed an opening brief in the California Court of Appeal, Petitioner filed a habeas petition in the Los Angeles County Superior Court. (LD 5.) On May 26, 2015, the Superior Court denied the petition, stating that the claims should be raised on appeal. (LD 6.)

On September 9, 2015, Petitioner filed an opening brief in the California Court of Appeal. (LD 7.) On April 26, 2016, the Court of Appeal affirmed the judgment in an unpublished decision. (LD 12.) It denied Petitioner's request for rehearing. (LD 13, 14.) Petitioner filed a petition for review in the California Supreme Court, which summarily denied review on July 13, 2016. (LD 15, 17.)

While his direct appeal was pending, Petitioner filed a round of habeas petitions. On October 8, 2015, he filed a second habeas petition in the Los Angeles County Superior Court, raising a claim corresponding to Ground One. (LD 8; LD 1 at 23-24.) On December 4, 2015, the Superior Court denied it on procedural grounds and on the merits. (LD 1 at 23-24; LD 11 at 69-71.) On March 30, 2016, Petitioner filed a habeas petition in the California

2

Court of Appeal, raising claims corresponding to Grounds One and Two. (LD 9.) On April 6, 2016, the Court of Appeal denied the petition on the ground that Petitioner's direct appeal was still pending and his appellate counsel had exclusive control over which issues to raise. (LD 10.) On April 18, 2016, Petitioner filed a habeas petition in the California Supreme Court, which summarily denied it on June 8, 2016. (LD 11, 16.)

## SUMMARY OF EVIDENCE AT TRIAL

Based on its independent review of the record, the Court adopts the following factual summary from the California Court of Appeal's unpublished opinion as a fair and accurate summary of the evidence presented at trial:

*Prosecution Evidence*

On March 1, 2013, around 8:50 a.m., [Petitioner] was driving a Chevrolet Suburban and made an illegal turn at Avenue K and Division Street in Lancaster, in violation of Vehicle Code section 21651, subdivision (a)(2). He was stopped by Los Angeles Sheriff's Deputy Monty Buckallew, a motorcycle traffic enforcement officer. One of [Petitioner]'s brothers, John Terry Butler, was the front passenger.

Deputy Buckallew video recorded the encounter, with audio sound, using the camera on his helmet. The recording was played for the jury, and a transcript was provided.

When Deputy Buckallew asked for [Petitioner]'s driver's license, [Petitioner] said he did not have it on him (he denied it was suspended, though in fact it was). [Petitioner] admitted his illegal turn, but asked the deputy to give him a break. Deputy Buckallew agreed to issue a citation only for the turn and to overlook [Petitioner]'s failure to have his license. In response to the Deputy's questions in filling out the citation, [Petitioner] identified himself using the name of another brother, Turhan Scott Butler, with an address on Caspian Drive in

Lancaster and a birthday of August 23, 1965. He said he did not know his driver's license number. When Deputy Buckallew asked [Petitioner]'s brother John (the passenger) for [Petitioner]'s name and birthday, he gave the name Turhan Butler with a birthday in April. When asked about the discrepancy in birthdates, [Petitioner] said that he was nervous, and that his birthday was actually April 23, 1965. He assured the deputy that he was not giving false information, and signed the citation with an illegible signature.

The citation for violating Vehicle Code section 21651, subdivision (a)(2), carries a $100 fine and two traffic violation points. Nearly three weeks later, on March 25, 2013, a person who was not [Petitioner] came to the Palmdale Sheriff's Station and presented photo identification to the watch commander, Lieutenant Kenneth Wright. Lieutenant Wright took a photograph of this person, sent it to Deputy Buckallew, and asked him to investigate the traffic citation earlier issued to [Petitioner]. Deputy Buckallew compared the photograph to the video recording of the traffic stop, and determined that the photograph did not depict the person to whom he had issued the citation.

*Defense Evidence*

[Petitioner] testified that he had returned to the Lancaster area to visit his father, who has Alzheimer's disease. At the time the citation was issued, [Petitioner]'s license had been suspended. He identified himself as his brother Turhan because he had had prior bad experiences with the police, had been to prison, and did not want to use his real name. Nonetheless, when he signed the citation, he signed in his own name.

(LD 12 at 2-4.)

///

///

4

**PETITIONER'S CONTENTIONS**

1.      Newly discovered evidence shows that Petitioner is innocent of both conviction offenses.  (Pet. at 5-8.)

2.      Appellate counsel was ineffective, in violation of the Sixth Amendment, for failing to raise three claims Petitioner wanted her to raise.  (Pet. at 8-49.)

**STANDARD OF REVIEW**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs the Court's consideration of Petitioner's cognizable federal claims.  28 U.S.C. § 2254(d), as amended by AEDPA, states:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim - (1) resulted in a decision that was contrary to, or
> involved an unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or (2) resulted in a
> decision that was based on an unreasonable determination of the facts in light
> of the evidence presented in the State court proceeding.

Clearly established federal law is "the governing principle or principles set forth by the Supreme Court at the time the state court renders its decision."  Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003).  "A Supreme Court decision is not clearly established law under § 2254(d)(1) unless it 'squarely addresses the issue' in the case before the state court [citation omitted] or 'establishes a legal principle that "clearly extends"' to the case before the state court."  Andrews v. Davis, 866 F.3d 994, 1018 (9th Cir. 2017) (quoting Wright v. Van Patten, 552 U.S. 120, 125-26 (2008), and Moses v. Payne, 555 F.3d 742, 754 (9th Cir. 2008)); see also Carey v. Musladin, 549 U.S. 70, 76-77 (2006).  "[I]f a habeas court must extend a rationale before it can apply to the facts at hand, then by definition the rationale

was not clearly established at the time of the state-court decision." <u>White v. Woodall</u>, 134 S. Ct. 1697, 1706 (2014). "Section 2254(d)(1) . . . does not require state courts to extend [Supreme Court] precedent or license federal courts to treat the failure to do so as error." <u>Id.</u> "A principle is clearly established law governing the case 'if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no fairminded disagreement on the question.'" <u>Andrews</u>, 866 F.3d at 1018 (quoting <u>White</u>, 134 S. Ct. at 1706-07).

A federal habeas court may grant relief under the "contrary to" clause if the state court "applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. <u>Williams v. Taylor</u>, 529 U.S. 362, 405-406 (2000). "The court may grant relief under the 'unreasonable application' clause if the state court correctly identifies the governing legal principle . . . but unreasonably applies it to the facts of a particular case." <u>Bell v. Cone</u>, 535 U.S. 685, 694 (2002). The "unreasonable application" clause requires that the state court decision be more than "incorrect or erroneous." <u>Andrews</u>, 866 F.3d at 1018. "The pivotal question is whether the state court's application of [the law] was unreasonable." <u>Harrington v. Richter</u>, 562 U.S. 86, 101 (2011).

A state court need not cite Supreme Court precedent when resolving a habeas corpus claim. <u>See</u> <u>Early v. Packer</u>, 537 U.S. 3, 8 (2002). "[S]o long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court precedent,]" the state court decision will not be "contrary to" clearly established federal law. <u>Id.</u>

A state court's factual determination is not unreasonable "merely because the federal habeas court would have reached a different conclusion in the first instance." <u>Wood v. Allen</u>, 558 U.S. 290, 301 (2010). Rather, § 2254(d)(2) requires federal habeas courts to "accord the state trial court substantial deference." <u>Brumfield v. Cain</u>, 135 S. Ct. 2269, 2277 (2015). Where "'[r]easonable minds reviewing the record might disagree' about the

6

finding in question, 'on habeas review that does not suffice to supersede the trial court's . . . determination.'" Wood, 558 U.S. at 301 (quoting Rice v. Collins, 546 U.S. 333, 341-42 (2006)). However, "[e]ven in the context of federal habeas, deference does not imply abandonment or abdication of judicial review," and "does not by definition preclude relief." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

In deciding a habeas petition, a federal court is not called upon to decide whether it agrees with the state court's determination. Rather, § 2254(d) "sets forth a 'highly deferential standard . . . , which demands that state-court decisions be given the benefit of the doubt.'" Andrews, 866 F.3d at 1018 (quoting Cullen v. Pinholster, 563 U.S. 170, 181 (2011)). While not a complete bar on the relitigation of claims already rejected in state court proceedings, § 2254(d) merely "'preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court precedent]' and 'goes no further.'" Id. at 1018-19 (quoting Richter, 562 U.S. at 102). "[E]ven a strong case for relief does not mean that the state court's contrary conclusion was unreasonable." Richter, 562 U.S. at 102.

A state court's silent denial of federal claims constitutes a denial "on the merits" for purposes of federal habeas review. Richter, 562 U.S. at 98-99. The federal habeas court "looks through" a state court's silent decision to the last reasoned decision of a lower state court, and applies the AEDPA standard to that decision. See Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018) (federal habeas court should "look through" unexplained state court decision to last state court decision "that does provide a relevant rationale" and "should then presume that the unexplained decision adopted the same reasoning," although presumption may be rebutted); Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991) ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding the judgment or rejecting the same claim rest upon the same ground.").

When no state court gives reasons for denying a federal claim, the habeas petitioner has the burden of "showing there was no reasonable basis for the state court to deny relief." Richter, 562 U.S. at 98. In such a case, the federal habeas court must independently review the record to determine whether the state court's denial was objectively unreasonable. See Stanley v. Cullen, 633 F.3d 852, 860 (9th Cir. 2011); Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003) .

Petitioner presented his claims to the state courts by habeas petition. (LD 8, 9, 11.) The Superior Court rejected Ground One on procedural grounds and on the merits; Petitioner did not raise Ground Two in the Superior Court. (LD 1 at 23-24, LD 11 at 69-71.) The Court of Appeal rejected Grounds One and Two on the procedural basis that Petitioner's direct appeal was still pending. (LD 10.) The California Supreme Court rejected Grounds One and Two summarily at a time when the Court of Appeal had already issued its decision on direct appeal but Petitioner's petition for review was still pending. (LD 16; see LD 12, 17.). Respondent renews his argument that Petitioner's claims are unexhausted because he presented them to the state courts before the conclusion of his direct appeal. (Answer at 1.) Alternatively, he argues that the Court should "look through" to the Superior Court's reasoned decision with respect to Ground One and should review Ground Two (as to which there is no reasoned state court decision) de novo. (Id. at 12, 23.)

Although a federal court cannot grant habeas relief on an unexhausted claim, it may deny an unexhausted claim on the merits "when it is perfectly clear that the applicant does not raise even a colorable federal claim." Cassett v. Stewart, 406 F.3d 614, 623-24 (9th Cir. 2005); see also 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.") Moreover, federal habeas courts may "deny writs of habeas corpus under § 2254 by engaging in de novo review when it is unclear whether AEDPA deference applies, because a habeas petitioner will not be entitled to a writ of

1  habeas corpus if his or her claim is rejected on de novo review." Berghuis v. Tompkins, 560

2  U.S. 370, 390 (2010) (citation omitted). Because Petitioner's federal claims clearly fail on

3  de novo review, the Court will not address whether the claims are exhausted or, if so, how

4  to apply the "look through" doctrine in this procedural context.

5                                        **DISCUSSION**

6  **I.      Ground One Does Not Warrant Federal Habeas Relief**

7          In Ground One, Petitioner contends that newly discovered evidence, namely, a post-

8  conviction affidavit from his brother, shows that he is innocent of both conviction offenses.

9  (Pet. at 5-8.) Respondent argues that Petitioner's claim is barred by the non-retroactivity

10 doctrine of Teague v. Lane, 489 U.S. 288 (1989), and alternatively fails on the merits.[2]

11 (Answer at 4-22.) For the reasons set forth below, the Court finds that Petitioner's actual

12 innocence claim is not barred by Teague but fails on the merits under de novo review.

13         **A.     Teague**

14         In Teague, the Supreme Court held that a new constitutional rule of criminal

15 procedure announced after a defendant's conviction became final cannot be applied

16 retroactively on federal habeas review, unless the new rule forbids criminal punishment of

17 primary individual conduct or is a "watershed" rule of criminal procedure. 489 U.S. at

18 310-12; see also Caspari v. Bohlen, 510 U.S. 383, 389, 396 (1994). Federal habeas courts

19 must decide at the outset whether Teague is implicated if the state argues that the

20 petitioner seeks the benefit of a new rule. Caspari, 510 U.S. at 389-90.

21         Teague, however, applies only to procedural rules; substantive rules are not subject

22 to its retroactivity bar. Montgomery v. Louisiana, 136 S. Ct. 718, 728 (2016); Schriro v.

23 Summerlin, 542 U.S. 348, 352 & n.4 (2004). Petitioner's freestanding actual innocence

24 claim is a substantive claim and is not barred by Teague. See Summerlin, 542 U.S. at 352

25 (noting that substantive rules generally "apply retroactively because they 'necessarily carry

26 _____

27     [2]   Respondent also argues that Ground One is foreclosed by AEDPA; however, the Court is
       reviewing the claim de novo.

28

                                            9

a significant risk that a defendant stands convicted of an act that the law does not make criminal' or faces a punishment that the law cannot impose on him") (citation omitted); see also Grube v. Blades, No. CV-01-357-S-BLW, 2006 WL 297203, at *24 (D. Idaho Feb. 6, 2006) ("A freestanding actual innocence claim is a substantive claim. Therefore, it is not barred by Teague, which affects only procedural rules.") The Court, therefore, rejects Respondent's Teague argument.

### B.    Applicable Federal Law

Under existing Supreme Court precedent, it is an open question whether a freestanding actual innocence claim is cognizable under federal habeas law. See District Attorney's Office v. Osborne, 557 U.S. 52, 71 (2009); House v. Bell, 547 U.S. 518, 554-55 (2006); Herrera v. Collins, 506 U.S. 390, 416-17 (1993); see also McQuiggin v. Perkins, 569 U.S. 383, 392 (2013) (noting that Supreme Court "ha[s] not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence"). In Herrera, the Supreme Court declared: "Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." 506 U.S. at 400. The Supreme Court acknowledged the possibility that a freestanding actual innocence claim might warrant federal habeas relief in a capital case, but stressed that it would be only upon an "extraordinarily high" and "truly persuasive" threshold showing. Id. at 417; see also House, 547 U.S. at 554-55 (finding that petitioner had not satisfied the "extraordinarily high" burden for a "hypothetical freestanding innocence claim").

The Ninth Circuit also "ha[s] not resolved whether a freestanding actual innocence claim is cognizable in a federal habeas corpus proceeding in the non-capital context, although [it has] assumed that such a claim is viable." Jones v. Taylor, 763 F.3d 1242, 1246 (9th Cir. 2014). The Ninth Circuit has held that if such a claim is cognizable, the petitioner must go beyond demonstrating doubt about his guilt and must affirmatively prove

that he is probably innocent.  Id. at 1246, 1251; Carriger v. Stewart, 132 F.3d 463, 476 (9th

Cir. 1997); Jackson v. Calderon, 211 F.3d 1148, 1165 (9th Cir. 2000).  Requiring affirmative

proof of innocence is appropriate, because when a petitioner makes a freestanding claim of

innocence, he is claiming that he is entitled to relief despite a constitutionally valid

conviction.  Carriger, 132 F.3d at 477.

### C. New Evidence

Petitioner's new evidence consists of a notarized affidavit by his brother Turhan

Butler, executed in Indiana on April 21, 2015.  (Pet., Ex. A.)  Turhan[3] declares that he gave

Petitioner permission to use his name "only if stopped by police" while visiting Lancaster in

2013.  (Id. ¶ 2.)  They agreed that Petitioner would pay any fines or fees for citations

incurred in Turhan's name.  (Id. ¶ 3.)  When Turhan received a traffic citation, he

complained to the sheriff's department because he had forgotten about his agreement with

Petitioner.  (Id. ¶ 4.)  At some point, an unnamed detective informed him that Petitioner had

used his name.  (Id. ¶ 5.)  Turhan told "the Detective and the District Attorney" that he did

not wish to prosecute.  (Id.)

### D. Analysis

Assuming that a freestanding actual innocence claim in a non-capital case is

cognizable in a habeas proceeding, Petitioner's evidentiary showing does not meet the

exacting standards for such a claim.

First, Turhan's consent to the use of his name has no bearing on Petitioner's

conviction on the false personation charge because consent is not relevant to that offense.

See Cal. Penal Code § 529(a); People v. Vaughn, 196 Cal. App. 2d 622, 625-33 (2000)

(lawyer who arranged for client's twin sister to impersonate client during arrest was guilty of

false personation).  Petitioner cannot show his innocence of false personation by showing

that Turhan consented.

---

[3]     To avoid confusion, the Court will refer to Turhan Butler by his first name.

Consent is generally a defense to an identity theft charge. <u>See</u> Cal. Penal Code § 530.5(a); <u>People v. Tillotson</u>, 157 Cal. App. 4th 517, 533 (2007) ("[T]o be guilty under section 530.5, subdivision (a), the defendant must (1) willfully obtain personal identifying information of another person, and (2) use the identifying information for an unlawful purpose without the person's consent.") Turhan declares that he consented to have his name used for the purpose of misrepresenting Petitioner's identity to the police. (Pet., Exh. A. ¶ 2.) In rejecting this claim, the Superior Court declared that Turhan's consent "to the use of his information for the illegal purpose of lying to the police . . . would not be a defense and would not undermine the whole prosecution."[4] (LD 11 at 70-71.) On direct appeal, the California Court of Appeal noted the illegal purpose of the alleged consent in rejecting Petitioner's claim that the evidence was insufficient because the prosecution failed to prove that he did not have Turhan's consent to the use of his identity. (LD 12 at 4-7.) The Court of Appeal found "overwhelming" evidence that Turhan did not give such consent (<u>id.</u> at 5), but also stated:

> We question whether, as a matter of public policy, any consent [Petitioner]'s brother might have given was a valid defense to an identity theft charge. Just as one cannot validly contract to prevent disclosure of information that is required to be disclosed as a matter of law (<u>Picton v. Anderson Union High School Dist.</u> (1996) 50 Cal. App. 4th 726, 733-34), it would be anomalous for section 530.5, subdivision (a) to contemplate a defense based on consent to permit another person to violate the law by not giving identifying information to [] an officer issuing a traffic citation. However, this issue was not raised below, and was not briefed by the parties. Because we affirm the judgment on other grounds, we do not discuss it further.

(<u>Id.</u> at n.2.)

---

[4]     Although the Court is reviewing this claim <u>de novo</u>, the state courts' reasoning is instructive, especially on an issue of California law.

But even assuming Turhan's testimony that he consented to Petitioner's use of his name to deceive the police would have cast doubt on the consent element of identity theft,[5] his post-conviction affidavit falls short of the demanding evidentiary showing needed for a freestanding actual innocence claim.  Post-trial affidavits of innocence are generally treated with "a fair degree of skepticism," Herrera, 506 U.S. at 417 & 506 U.S. at 423 (O'Connor, J., concurring), especially if they are from relatives, see House, 547 U.S. at 552 (noting that testimony by relatives might have less probative value).

Here, Turhan executed his affidavit six months after Petitioner's conviction.  (Pet., Ex. A.)  He gives no explanation for his failure to testify at Petitioner's trial or, for that matter, to tell the police or district attorney's office that Petitioner had used his name with his permission.  Although Turhan declares that he told "the Detective and the District Attorney" that he did not want to prosecute Petitioner, he does not say — and nothing at trial suggested — that he ever told them that Petitioner had used his name with his consent.  (Id. at ¶ 5.)  And Petitioner's representations to the trial court suggest that Turhan was actively avoiding having to testify.  He did not testify at the preliminary hearing on March 17, 2014. (LD 1 at 2.)  At the November 5, 2014 hearing on Petitioner's motion to dismiss, Petitioner told the trial court that: Turhan had married and moved to another state without giving Petitioner or other family members his new address; Turhan's wife had called Petitioner and told him that they had moved and would not return to California; and Petitioner's sister told him that, according to their mother, Turhan had told a detective that he "was not going to pursue this, and he wasn't coming out here to testify."  (LD 19, 2 Reporter's Transcript ("RT") E22-E24.)  Petitioner wanted to testify at trial that Turhan had  consented, but the evidence was excluded as hearsay.  (2 RT 611-12, 619-20; 3 RT 1246-47.)  Instead, he

---

[5]    Petitioner cites People v. Lee, 11 Cal. App. 5th 344, 403-44 (2017), in which the appellate court held that when the victims voluntarily sent the defendant checks and wire transfers and he misused the money, he did not commit identity theft because he did not use their identifying information without their permission.  The court rejected the argument that the victims' consent was not valid because they did not consent to the "unlawful use."  (Traverse at 23-24.)  Lee did not involve consent to have one's identity used to deceive law enforcement.  In any event, the Court need not delve into the nuances of California law on this point because, as set forth below, Petitioner's evidentiary showing is insufficient.

argued to the jury that prosecution did not present testimony from Turhan or anybody else that Turhan did not consent. (3 RT 1557-58.)

The prosecution, however, presented circumstantial evidence that Turhan did not consent. The jury heard that about three weeks after the traffic stop, a person who was not Petitioner came to the sheriff's office, presented photographic identification, and allowed himself to be photographed by the watch commander, who then requested the deputy who issued the citation to investigate "a certain traffic stop." (3 RT 944-45.) The jury could infer from this testimony that the person was Turhan.[6] The prosecutor argued to the jury that if Turhan had consented to Petitioner's use of his identity, he would not have subjected himself to a visual comparison and would have simply paid the fine. (3 RT 1562.) On appeal, the Court of Appeal opined that "[t]he only reasonable inference" was that Turhan "came to the Sheriff's station to complain that someone must have used his identity," and therefore, he had not consented to Petitioner's use of his identity. (LD 12 at 6.) If Turhan had testified at trial that he consented and subsequently forgot about his consent, the jury could have weighed his testimony against the inferences argued by the prosecutor from the visit to the sheriff's station. See Herrera, 506 U.S. at 418. Although Turhan's post-conviction affidavit is some evidence that he consented, it must be viewed in the context of his failure to tell the police or district attorney's office that Petitioner had his permission to use his name, his reluctance to testify at trial, and the feebleness of his explanation that he forgot about his consent when he complained about the citation. See id.

"Evidence that merely undercuts trial testimony or casts doubt on the petitioner's guilt, but does not affirmatively prove innocence, is insufficient to merit relief on a freestanding claim of actual innocence." Jones, 763 F.3d at 1251; see Carriger, 132 F.3d at 476 ( threshold for a freestanding claim of actual innocence "contemplates a stronger

---

[6]     The prosecution wanted to introduce a letter and work schedule that Turhan brought to the sheriff's station to show the police that he could not be the person who received the citation because he was at work that day. (2 RT 317-18, 605.) The trial court excluded this evidence for lack of foundation and on hearsay grounds. (2 RT 319, 606-10.)

showing than insufficiency of the evidence to convict").  Petitioner's showing does not begin to approach the extraordinarily high level of proof necessary to merit relief on a freestanding actual innocence claim.  See, e.g., House, 547 U.S. at 553-55 (new DNA evidence that semen found on victim came from her husband, new evidence that victim's blood on petitioner's clothes could not have come from victim when alive and likely came from spilled vials, and new testimony from multiple disinterested witnesses implicating victim's husband was insufficient to satisfy burden for freestanding actual innocence claim); Carriger, 132 F.3d at 474-77 (evidence that another suspect had confessed to the murder, described details only a participant in the crime would have known, and boasted that petitioner had been set up was insufficient to affirmatively prove actual innocence).

Accordingly, Petitioner is not entitled to habeas relief on Ground One.

## II.     Ground Two Does Not Warrant Federal Habeas Relief

In Ground Two, Petitioner contends that his appellate counsel was ineffective for failing to raise the following arguments on direct appeal:  (1) Superior Court Judge White exceeded his authority and committed "fraud on the court" by revoking Petitioner's pro per status, which delayed the trial and prejudiced Petitioner because during that time Turhan left the state (Pet. at 8-34); (2) enhancement of Petitioner's sentence based on his 1988 robbery conviction was precluded by collateral estoppel and Boykin/Tahl,[7] because he was not advised of his right against self-incrimination before pleading guilty and later another court ruled that the prior conviction was unconstitutional (id. at 35-45); and (3) the prosecution failed to prove the "additional act" element of false personation because Petitioner had signed his own name to the citation (id. at 45-49).  As previously discussed, the Court will apply the de novo standard of review.

### A.     Applicable Federal Law

The right to effective assistance of counsel encompasses the right to effective assistance of appellate counsel on a first appeal as of right.  Evitts v. Lucey, 469 U.S. 387,

---

[7]   Boykin v. Alabama, 395 U.S. 238 (1969); In re Tahl, 1 Cal.3d 122 (1969).

394 (1985).  But appellate counsel does not have a constitutional duty to raise every nonfrivolous issue requested by the petitioner.  Jones v. Barnes, 463 U.S. 745, 751-52 (1983).  The analytical framework of Strickland v. Washington, 466 U.S. 668 (1984), governs: the petitioner must show that appellate counsel's performance fell below an objective standard of reasonableness, and that there is a reasonable probability that, but for counsel's failure to raise the issue, the petitioner would have prevailed on appeal.  Cockett v. Ray, 333 F.3d 938, 944 (9th Cir. 2003); Miller v. Keeney, 882 F.2d 1428, 1434 (9th Cir. 1989); see also Strickland, 466 U.S. at 687, 694.  "[A]ppellate counsel's failure to raise issues on direct appeal does not constitute ineffective assistance when appeal would not have provided grounds for reversal."  Wildman v. Johnson, 261 F.3d 832, 840 (9th Cir. 2001).  The Ninth Circuit has explained:

> In many instances, appellate counsel will fail to raise an issue because she foresees little or no likelihood of success on that issue; indeed, the weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy. . . .  For these reasons, a lawyer who throws in every arguable point – 'just in case' –  is likely to serve her client less effectively than one who concentrates solely on the strong arguments.  Appellate counsel will therefore frequently remain above an objective standard of competence (prong one) and have caused her client no prejudice (prong two) for the same reason – because she declined to raise a weak issue.

Miller, 882 F.2d at 1434 (footnote omitted).

**B.**     **Subclaim One: Revocation of Pro Per[8] Status and Delay in Trial**

**1.**     **Background**

Petitioner was granted pro per status by Judge Steven Ogden on March 5, 2014.  (See LD 1 at 1.)  On April 1, 2014, Petitioner appeared before Judge Thomas White, who

---

[8]     California courts use the term "in propria persona," often shortened to "pro per," to refer to unrepresented litigants.  Federal courts use the term "pro se."

revoked his pro per status and appointed his standby attorney to be his counsel. (LD 1 at 1-2; 2 RT A8.) Judge White revoked Petitioner's pro per status on the ground that Judge Ogden did not have the benefit of information about Petitioner's misconduct during previous criminal proceedings and detentions. (LD 1 at 2; 2 RT A4-A8.) On April 21, 2014, Judge Daviann Mitchell denied Petitioner's request to revisit the issue. (LD 1 at 3; 2 RT B2.) After a hearing, she denied Petitioner's motion for substitution of counsel under People v. Marsden, 2 Cal.3d 118 (1970). (LD 1 at 3; Petitioner's Lodgment ("PLD") (c) at B32.)

Petitioner filed a petition for a writ of mandate in the California Court of Appeal. He argued that by reversing Judge Ogden's decision granting Petitioner pro per status, Judge White had exceeded his authority, acted as an appellate court, and committed "fraud on the court." (PLD (b) at 1-31.) The district attorney's office submitted a response stating that although Petitioner's contentions lacked merit, Judge White had nevertheless abused his discretion because the record did not show a causal link between Petitioner's prior misconduct and the current proceedings. (Id. at 53-56.) On September 26, 2014, the Court of Appeal issued an "Alternative Writ of Mandate; Order; and Temporary Stay Order" ordering the trial court to either vacate the April 1, 2014 order revoking Petitioner's pro per status or show cause why a writ of mandate should not issue. (Id. at 50-52.) On October 9, 2014, after ascertaining that Petitioner still wanted to proceed pro per and recalled and understood the rights, obligations, and consequences of self-representation, Judge White reinstated Petitioner's pro per status, with defense counsel again serving as standby counsel. (Id. at 65; 2 RT C1-C2.) On October 27, 2014, the Court of Appeal discharged the alternative writ and dismissed the petition for a writ of mandate as moot. (PLD (b) at 67.) On October 30, 2014, the case was assigned to Judge Eric Harmon for trial. (LD 1 at 8.)

Petitioner filed a motion to dismiss, arguing that his speedy trial rights were violated when Judge White "committed fraud on the court" and improperly revoked his pro per status as part of a conspiracy to induce him to take a plea, because Judge White's actions caused a delay in the case, during which time Turhan moved out of state and was unavailable to

testify on Petitioner's behalf.  (1 CT 116-21; 2 RT D5.)  On November 5, 2014, trial court heard and denied Petitioner's motion.  (LD 1 at 9; 2 RT E4-E28.)

After his conviction, Petitioner requested appellate counsel to raise this claim on appeal.  (PLD (a) at 3-4, 7.)  In a letter dated July 6, 2015, appellate counsel said that she had requested a copy of his petition for a writ of mandate in order to determine whether a viable issue existed, but noted that it would be difficult to show prejudice because even though the prosecution had the burden of proving that Petitioner did not have his brother's consent, if Petitioner knew that his brother had consented, it was his responsibility to subpoena his brother before he left the state.  (Id. at 9.)  In a letter dated July 17, 2015, appellate counsel explained in detail why she had decided not to brief the issue.  (Id. at 15-17.)  After summarizing the proceedings, she stated that Petitioner had presented no evidence of fraud or conspiracy between Judge White and the prosecutor and standby counsel.  (Id. at 16.)  The only potential basis for a speedy trial violation was that Judge White revoked Petitioner's pro per status based on old misconduct without providing a nexus between the old misconduct and Petitioner's current pro per status, and, as a result, Petitioner's appointed counsel continued the matter for six or seven months until Petitioner's pro per status was reinstated.  (Id.)  This did not equate to a violation of Petitioner's speedy trial rights because a delay of six or seven months was not long enough.  (Id.)  Appellate counsel then reiterated that Petitioner could not prove prejudice:

> I know you feel differently, but it was your duty as your own attorney to secure the presence of a witness that would undermine the prosecution's case against you. You didn't do this while you were pro per, and you have no proof, at least none that I've seen, that your court-appointed counsel failed to secure the witness while your pro per status was revoked.  As far as I can tell, you actually relied on the fact that your brother was out-of-state and assumed that this was in your

favor because, without your brother, the prosecution couldn't prove their case against you.  You even admit as much on the record.

(Id.)

She continued:

In the end, you, as your own attorney, should have subpoenaed your brother and secured his testimony for the defense as soon as you knew the charges against you and the fact that his consent would undermine the prosecution's case.  The fact that you didn't know the law well enough to realize that the prosecution could prove its case without your brother doesn't change a thing.

(Id. at 17.)

In a letter dated October 12, 2015, appellate counsel stated that she had f ollowed up on every issue Petitioner wanted her to raise and would have briefed them if they had been viable, but she would not brief issues she believed to be frivolous.  (Id. at 34.)

## 2.    Analysis

The correspondence between Petitioner and appellate counsel shows that she conscientiously researched the factual and legal basis for the claim and decided not to raise it because she did not believe it to be meritorious.  Her reasons for not raising the claim, as set forth in her July 17, 2015 letter, were reasonable.  Judge White's revocation of Petitioner's pro per status was erroneous, but after the California Court of Appeal granted Petitioner relief, his pro per status was reinstated.  Nothing in the record, fairly read, suggests any judicial misconduct in connection with the revocation.[9]

The revocation of Petitioner's pro per status delayed the trial because defense counsel sought continuances and the proceedings were stayed while the writ of mandate

---

[9]    Petitioner argues that Judge White exceeded his judicial authority and "made a false record" when he stated that certain information about Petitioner's prior case was not available to Judge Ogden.  (Pet. at 9-10; Traverse at 43.)  He also believes that the Court of Appeal issued an alternative writ of mandate based on his "fraud on the court" argument rather than due to the lack of nexus between his pro per status and his prior misconduct.  (Traverse at 56.)  Appellate counsel reasonably determined that these arguments were not meritorious grounds for appeal.

was pending.  (2 RT E10-E17.)  Determining when a delay violates the federal Constitution involves "a balancing test, in which the conduct of both the prosecution and the defendant are weighed."  Barker v. Wingo, 407 U.S. 514, 530 (1972).  The four factors to be considered are: (1) the length of the delay; (2) the reasons for the delay; (3) the defendant's assertion of the right to a speedy trial; and (4) whether the defendant was prejudiced by the delay.  Id. at 530-32.  No single factor is either necessary or sufficient, id. at 533, but the delay must be long enough to trigger an analysis into the other three factors, id. at 530.  In general, a delay of a year or more between accusation and trial is considered long enough to trigger the Barker inquiry.  See Doggett v. United States, 505 U.S. 647, 652 n.1 (1992).

Here, the delay ascribable to Judge White's ruling was six months and a few days — the period between April 1, 2014, when Petitioner's pro per status was revoked, and October 9, 2014, when it was reinstated — and Petitioner's trial commenced on November 6, 2014, eight months after his arraignment on the arrest warrant on March 5, 2014.  (LD 1 at 1, 10.) Thus, the delay was not long enough to trigger an inquiry into the other factors.  See Barker, 407 U.S. at 530; Doggett, 505 U.S. at 652 n.1.  Moreover, as the trial court pointed out, Petitioner did not object on the record when his counsel sought continuances, and the proceedings had to be suspended while the writ of mandate was pending.  (LD 1 at 3-8; 2 RT E14-E17.)  Appellate counsel also reasonably concluded that Petitioner could not show prejudice from Turhan's having moved out of state because Petitioner had not tried to subpoena him or to hire an investigator to locate him while he was representing himself.[10]

---

[10]  Petitioner declares that at the time his pro per status was revoked, he had already prepared motions for appointment of a private investigator and to serve a subpoena on Turhan, but his counsel refused to take and file them.  (Pet. at 26, Ex. B [Petitioner's Declaration]; Traverse at 61.)  But at the April 21, 2014 Marsden hearing, neither Petitioner nor his counsel mentioned anything about an investigator or subpoenas when they talked about their disagreements about motions Petitioner wanted counsel to file.  (PLD (c) at B12, B15-27.)  And at the November 5, 2014 hearing on Petitioner's motion to dismiss on speedy trial grounds, Petitioner responded to the trial court's inquiry about what he had done to secure Turhan's presence at trial by saying that family members had tried to bring Turhan in.  (2 RT E22-E23.)  When the trial court asked whether he had applied for an investigator or tried to use

(continued...)

Accordingly, Petitioner's "fraud on the court" and speedy trial arguments were not meritorious. Appellate counsel did not perform deficiently when she refused to raise them, and Petitioner was not prejudiced because they would not have provided grounds for reversal. See Wildman, 261 F.3d at 840; Miller, 882 F.2d at 1434; see also Boag v. Raines, 769 F.2d 1341, 1344 (9th Cir. 1985) (failure to raise meritless argument does not constitute ineffective assistance). Petitioner has not shown ineffective assistance.

## C. Subclaim Two: Failure to Challenge 1988 Prior Conviction

Petitioner contends that appellate counsel was ineffective for failing to challenge the enhancement of his sentence based on his 1988 robbery conviction in Case No. A706580. (Pet. at 35-45.) He maintains that counsel should have argued that: Petitioner's guilty plea in Case No. A706580 was not voluntary and intelligent because (1) he was not advised of his Fifth Amendment right against self-incrimination, and (2) and reliance on the prior conviction to enhance his sentence was precluded by collateral estoppel because in another 1988 case, Case No. MA04518, the trial court ruled that the prior conviction should be stricken because of the deficient advisement. (Id.)

### 1. Background

During trial, Petitioner filed a motion to strike his 1988 robbery conviction, making the arguments he raises here. (1 CT 85-101 [Petitioner's motion, including transcript of guilty plea]; 2 CT 260-90 [opposition to Petitioner's motion]; 4 RT 2702-07.) On December 12, 2015, the trial court held a hearing regarding the matter. (4 RT 2717-41.) The prosecutor agreed that Petitioner was not expressly advised of his Fifth Amendment right against self-

---

[10](...continued)
the court's subpoena power, Petitioner did not say that he had been prevented from doing so by the revocation of his pro per status, but argued that it was the prosecutor's job to secure witnesses. (2 RT E24-E26.)

incrimination on the record. (4 RT 2717.) After a lengthy discussion regarding the applicable facts and law (4 RT 2717-35), the trial court ruled:

> I've reviewed the transcript itself . . . and I've considered the fact that both parties agree that your right not to incriminate yourself was not explicitly stated to you. Then I look at your prior contacts with law enforcement including the court system . . . .

> I also consider the fact that at the time of your plea you were specifically told that you don't have to plead guilty if you don't want to which is very similar to what happened in [People v. Howard, 1 Cal.4th 1132 (1980)], that you understood and acknowledged the difference between having a trial and pleading guilty and that you will be giving up your right to make a defense to the charge and that the court made all of its findings at that time regarding your plea.

> I don't think there needs to be a talismanic phrase right not to incriminate yourself. I think you knew of that at the time, and I base that on the fact that in at least one of the documents presented in the People's exhibits attached to their motion you had previously been advised of that.

> Also a guilty plea or plea of no contest is . . . the most complete form of self incrimination, and by that the defendant admits that he is guilty of the offense charged; so you knew that you had a right not to plead guilty, and the record shows that you knew it. The admonitions were not empty words because you knew at that time previously your rights and because you were actively represented by counsel and preparing . . . for a trial on charges to which you had pled not guilty.

> So considering the totality of the relevant circumstances, I conclude that your prior conviction, your plea in that matter was voluntary and intelligent despite

the absence of an explicit admonition of the privilege against self-incrimination; so that's

my ruling on that.

(4 RT 2735-36.)

After his conviction, Petitioner wanted appellate counsel to obtain records from Case No. MA04518 and to challenge reliance on his 1988 robbery conviction at sentencing on the grounds raised here. (PLD (a) at 3-4, 6-7.) After an initial misunderstanding (id. at 8-9, 13-14), appellate counsel agreed to obtain records from Case No. MA04518. (Id. at 20.) In a letter dated August 21, 2015, she explained that she had obtained and reviewed the records, but the facts were not as represented by Petitioner. (Id. at 24.) Rather, the court had only made a tentative ruling to strike Petitioner's prior conviction based on the failure to advise him of his Fifth Amendment right against self-incrimination. (Id.) The prosecutor then argued for more time to research the issue, stating that he had found caselaw to the effect that an evidentiary hearing would be necessary to determine whether Petitioner actually knew of his right against self-incrimination. (Id. at 24-25.) At a hearing on August 29, 2008, Petitioner argued that the tentative ruling should be made final, but the trial court continued the matter. (Id. at 25-26.) Appellate counsel summarized the subsequent proceedings, which included revocation of Petitioner's pro per status on September 16, 2008, and his guilty plea and sentencing on October 23, 2008. (Id. at 26.)

Appellate counsel then explained:

As opposed to what you told me, a hearing was never held and, thus, no final

determination was ever made. Rather, only a tentative ruling was made, and then

you pleaded guilty before a final ruling was made. Since you pleaded guilty, there

was also no sentencing hearing where, normally, such a motion to strike a prior

would be heard and argued. As such, there's no issue here to brief on appeal

because no court ever heard arguments on the issue and no final determination

was ever made by the court. In sum, the court in this case was not bound by any

prior, final determination. It was merely Judge Zacky's tentative opinion based on

the information before him at the time.  It was not this final ruling.  That's a big

difference.

(Id.)

She concluded that she would not brief the issue because she had "no legal basis

upon which to make the argument."  (Id.)

In letters dated September 8 and 27, 2015, Petitioner disagreed and argued that

under M & R Properties v. Thomson, 11 Cal. App. 4th 899 (1993), the court's tentative ruling

became final when the prosecution settled the case instead of presenting argument and

evidence regarding the prior conviction.  (Id. at 27-28, 31.)  In a letter dated October 12,

2015, appellate counsel stated:

> I would agree with your "tentative ruling" analysis if the facts had been slightly
>
> different.  For instance, you filed a sentencing motion during pre-trial proceedings;
>
> in that case, it could be argued the court did not need to address it at that time
>
> because sentencing was a long way off.  Another problem is that there was never
>
> any argument held on or, for that matter, off the record.  Since the court required
>
> argument, because the prosecution made a point of it, the tentative ruling was
>
> nothing more than the court thinking out loud.  It was not a final ruling, and it did
>
> not become a final rul[ing].  As for your contention that no party contested the
>
> ruling, you are very mistaken because the prosecution immediately argued . . . "I
>
> have read that case, and that's what led me to the other case that says if we can
>
> prove that he knew of his rights, that it does not invalidate the strike."  In sum, I
>
> don't agree with your analysis.

(PLD (a) at 33.)

## 2. Analysis

The correspondence between Petitioner and appellate counsel shows that counsel

obtained and reviewed the pertinent records, researched the issue, and concluded that a

challenge to Petitioner's 1988 robbery conviction based on the grounds he identified would not be meritorious.

Under California law, collateral estoppel prevents re-litigation of issues decided in a prior matter if: (1) the issue is identical to the one decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the issue was necessarily decided in the prior proceeding; (4) the decision in the prior proceeding was final and on the merits; and (5) the party against whom preclusion is sought is the same or is in privity with the party from the prior proceeding. See Lucido v. Superior Court, 51 Cal.3d 335, 341 (1990). Once a prior conviction is ruled unconstitutional, collateral estoppel may bar its use for enhancement in subsequent actions. See People v. Howie, 41 Cal. App. 4th 729, 736 (1995). Here, the court in Case No. MA041518 made only a tentative ruling that it would strike the prior conviction based on a failure to advise Petitioner of his Fifth Amendment rights, subject to receiving more research at the next trial date. (PLD (d) at 28.) At the next trial date, Petitioner vigorously protested when the court allowed the prosecution more time, but the court stated that the case was not yet at the trial stage and there was no reason to resolve the issue at that time. (PLD (e) at 17-18.) The issue was never resolved because the case was settled. (PLD (g).) Appellate counsel reasonably decided that there was no final ruling regarding the prior conviction and collateral estoppel did not apply.

Furthermore, there was no reasonable likelihood that a separate argument that Petitioner's 1988 plea was not voluntary and intelligent would have been successful on appeal. (See 4 RT 2735-36.) In Howard, the California Supreme Court held that the defendant's admission to a prior conviction was voluntary and intelligent despite the failure to advise him of his Fifth Amendment rights because the record demonstrated that he knew that he had a right not to incriminate himself. 1 Cal.4th at 1180. Here, the record of the 1988 plea hearing shows that: Petitioner was advised that he did not have to plead guilty; he acknowledged that he understood the difference between having a trial and pleading guilty; and he was advised and acknowledged that he would be giving up his right to defend against the charge. (1 CT 98-99.) Moreover, Petitioner had been advised of his rights against self-

incrimination in earlier criminal proceedings. (2 CT 263.) See People v. Mosby, 33 Cal.4th 353, 365 (2004) (although defendant was not advised of his rights to remain silent and to confront witnesses, court could infer his knowledge of these rights from his prior experiences with criminal justice system).

Accordingly, Petitioner's arguments regarding his 1988 prior conviction were not meritorious. Appellate counsel did not perform deficiently when she refused to raise them and Petitioner was not prejudiced by her failure to do so. See Wildman, 261 F.3d at 840; Miller, 882 F.2d at 1434; Boag, 769 F.2d at 1344. Petitioner has not shown ineffective assistance.

### D.    Subclaim Three: "Additional Act" Requirement

Petitioner contends that appellate counsel was ineffective for failing to argue that the prosecution failed to prove the "additional act" requirement of false personation because Petitioner had signed his own name (rather than Turhan's name) on the citation.[11] (Pet. at 45-49.)

### 1.    Background

Petitioner raised this argument during trial, but the trial court rejected it, pointing out that the signature on the citation was illegible. (2 RT 314-16; 3 RT 950-57, 1201-03.) On direct appeal, appellate counsel initially wrote to Petitioner that she would argue that there was insufficient evidence of an "additional act" (PLD (a) at 5), but later informed him that after researching the issue, she decided that she could not brief it (id. at 22-23.) She explained that the case People v. Chardon, 77 Cal. App. 4th 205 (1999), "addressed this

---

[11]    Cal. Penal Code § 529 (a) states, in pertinent part:

Every person who falsely personates another in either his or her private or official capacity, and in that assumed character does any of the following, is punishable pursuant to subdivision (b):
. . .
(3) Does any other act whereby, if done by the person falsely personated, he might, in any event, become liable to any suit or prosecution, or to pay any sum of money, or to incur any charge, forfeiture, or penalty, or whereby any benefit might accrue to the party personating, or to any other person.

26

very scenario" and "completely undermine[d] the argument that the prosecution failed to prove an 'additional act.'" (Id. at 23.)  She wrote:

> In Chardon, defendant is pulled over for a traffic stop.  In order to avoid being cited for driving with a suspended license, she gives the officer her sister's name and birthdate, thereby impersonating her sister.  The officer issues the citation and defendant signs it while she is personifying her sister.  On review, the appellate court found sufficient evidence of an "additional act" because she signed the citation with her sister's name while she was personifying her sister.  I know what you're going to say, namely that since you didn't sign your brother's name to the citation, but rather your own, there's no "additional act."  The problem with that is that the name you signed is undecipherable, so it's not your name, it's not his name, but it's still you acting as your brother and signing a name to the citation as a promise to appear.  Since there's no reason for the officer to question the signature, your brother could have potentially been subject to arrest had you failed to appear in court on the citation.  If, for instance, you had legibly written your name, we would probably have an issue, because then I could argue that although you gave the officer a false name, you ultimately assumed responsibility for the citation because you signed with your name.  I will, in any case, try and think of a way around this, but it doesn't look good.

(PLD (a) at 23.)

Trial counsel did not raise the issue in the opening brief.  (LD 7.)  In her October 12, 2015 letter, she responded to Petitioner's argument that Chardon was favorable to him (PLD (a) at 31-32), as follows:

> As promised, I did try to find a way around Chardon by requesting a copy of the citation so that I could see what name was actually signed.  My supervisor and I were in agreement — the name you signed on the citation is definitely not your own.  In addition, there is no evidence on the record, other than your word, that

this is your signature: no expert opinion, no signature comparison, nothing.  So,

again, I don't agree with your analysis.

(PLD (a) at 34.)

## 2. Analysis

Under California law, the offense of false personation under Cal. Penal Code § 529(a)(3) requires more than proof that the defendant falsely personated another person in a context that exposed the impersonated individual to potential liability or provided someone with a relevant benefit; it requires an act separate from the false identification that occurred while the defendant was acting in the assumed character.  People v. Guion, 213 Cal. App. 4th 1426, 1434 (2013).  Giving the police a driver's license or other identifying document belonging the person being impersonated merely supports the false claim of identity and is not an "additional act."  Id. at 1435; People v. Casarez, 203 Cal. App. 4th 1173, 1190-92 (2012).  Signing a citation in the other person's name, however, exposes that person to potential criminal liability for failure to appear in addition to liability for the citation, and thus constitutes an "additional act."  Chardon, 77 Cal. App. 4th at 212 (defendant who signed her sister's name to traffic citation committed "additional act").

Petitioner argues that his case is not like Chardon because he testified at trial that he signed his own name (3 RT 1247), and no evidence was presented to challenge his testimony that the name he signed was his.  (Pet. at 46; Traverse at 49.)  But Petitioner identified himself as Turhan and the citation was issued to Turhan; an illegible signature would naturally be assumed to be Turhan's.  Appellate counsel researched the applicable law, requested a copy of the citation, and discussed the issue with her supervisor, who agreed that the signature on the citation did not look like Petitioner's name.  Counsel then reasonably concluded that she could not plausibly distinguish Chardon, and that an argument that the prosecution had not proved the "additional act" element of false personation would not be meritorious.

Accordingly, appellate counsel did not perform deficiently when she refused to raise this issue and Petitioner was not prejudiced because it would not have provided grounds for

reversal.  See Wildman, 261 F.3d at 840; Miller, 882 F.2d at 1434; Boag, 769 F.2d at 1344.

Petitioner has not shown ineffective assistance.

************************

Accordingly, Ground Two does not warrant federal habeas relief.

## CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11 of the Rules Governing Section 2254 cases, the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  For the reasons stated above, the Court concludes that Petitioner has not made a substantial showing of the denial of a constitutional right, as is required to support the issuance of a certificate of appealability.  See 28 U.S.C. § 2253(c)(2).

## ORDER

IT IS ORDERED: (1) that the Petition is denied; (2) a certificate of appealability is denied; and (3) Judgment shall be entered dismissing this action with prejudice.

DATED: May 21, 2018

_____/s/ John E. McDermott_____
JOHN E. MCDERMOTT
UNITED STATES MAGISTRATE JUDGE